IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Northern Division*

| | |
|---|---|
| **ARGO FINE IMPORTS, LLC** ) <br> 68388 Commercial Way North ) <br> Mandeville, LA 70471 ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **M/V TAC IMOLA**, IMO No. 9932103 ) <br> her engines, boilers, apparel, tackle, boats, ) <br> appurtenances, etc., *in rem*, ) <br> ) <br> and ) <br> ) <br> **HANWIN SHIPPING LIMITED,** ) <br> Room 802, Magnolia Plaza, ) <br> No.777 Hongqiao Road, ) <br> Shanghai, China Shanghai, *in personam,* ) <br> ) <br> and ) <br> ) <br> **RATU SHIPPING CO. SA,** ) <br> 5th Floor, Suite 502, ) <br> 53rd Street, Marbella, Panama, *in personam,* ) <br> ) <br> and ) <br> ) <br> **NISSHIN SHIPPING CO LTD,** ) <br> 19F Nihonbashi 1 Chome Bldg 1-4-1, ) <br> Nihonbashi Chuo-ku, ) <br> Tokyo, Japan 103-0027, *in personam,* ) <br> ) <br> and ) <br> ) <br> **FLEET MANAGEMENT LTD-HKG,** ) <br> 27th floor, South Island Place, ) <br> 8, Wong Chuk Hang Road, ) <br> Wong Chuk Hang, Hong Kong, China, ) <br> *in personam,* ) <br> ) <br> Defendants. ) | Case No. 1:22-cv-2990 <br><br> IN ADMIRALTY |

# VERIFIED COMPLAINT

Plaintiff, Argo Fine Imports, LLC ("Argo"), by and through its undersigned attorneys, respectfully submits this Verified Complaint against defendants M/V TAC IMOLA, her engines, boilers, apparel, tackle, boats, appurtenances, etc. (the "Vessel"), *in rem*, Hanwin Shipping Limited ("Hanwin"), Ratu Shipping Co. SA ("Ratu"), Nisshin Shipping Co. Ltd. ("Nisshin"), and Fleet Management Ltd.-HKG ("Fleet") (Ratu, Nisshin, and Fleet are collectively referred to as the "Owners"), *in personam*, (Hanwin, Owners, and the Vessel, are collectively referred to as the "Defendants" throughout this Verified Complaint) and alleges upon information and belief as follows:

## JURISDICTION & VENUE

1. This is a case of admiralty and maritime jurisdiction, 28 U.S.C. § 1333. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This Verified Complaint is *in rem* against the Vessel. This Verified Complaint is *in personam* against Hanwin and the Owners.

2. This Court has personal jurisdiction over the Defendants because each of the Defendants has: (i) transacted business and/or performed any character of work or service in the State; (ii) contracted to supply goods and/or services in the State; and/or (iii) caused tortious injury in the State by an act or omission in the State.

3. Venue is proper in this District pursuant to 28 USC § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is or was situated in the District.

4. Venue is proper in this District pursuant to 28 USC § 1391(b)(3) because each of the Defendants is subject to this Court's personal jurisdiction with respect to this action.

5. This Court has personal jurisdiction over the Defendant Vessel and venue is proper in this District pursuant to the Letter of Undertaking dated July 1, 2022, a true copy of which is attached hereto as **Exhibit A**.

## PARTIES

6. Plaintiff Argo is a limited liability company duly organized under the laws of the state of Louisiana with its principal place of business in Mandeville, Louisiana. Argo is in the business of importing and supplying high quality plywood, lumber, and/or hardwood, and at all times relevant hereto was engaged in the business of importing wood products from overseas, including the "Cargo" more fully described in the attached **Exhibit B** – the nine (9) "Bills of Lading" numbered:

> HSLM01QINBAL010; HSLM01QINBAL011; HSLM01QINBAL012; HSLM01QINBAL013; HSLM01QINBAL014; HSLM01QINBAL015; HSLM01QINBAL016; HSLM01QINBAL017; HSLM01QINBAL018.

7. Upon information and belief, the Vessel is a Panamanian-flagged bulker with 5 cargo holds and was engaged on its maiden voyage.

8. Upon information and belief, at all times relevant hereto, the Vessel was owned by Ratu, with its principal place of business located at World Trade Centre, 53rd Street, Marbella, 5th Floor, Suite 502, Panama.

9. Upon information and belief, at all times relevant hereto, the Vessel was co-managed by Nisshin, with its principal place of business located at 19F Nihonbashi 1 Chome Bldg 1-4-1, Nihonbashi Chuo-ku, Tokyo, Japan 103-0027.

10. Upon information and belief, at all times relevant hereto, the Vessel was

also co-managed by Fleet, with its principal place of business located on the 27th floor, South Island Place, 8, Wong Chuk Hang Road, Wong Chuk Hang, Hong Kong, China.

11. Upon information and belief, at all times relevant hereto, the Vessel was time chartered from Ratu by non-party Transatlantica Commodities Pte Ltd ("Transatlantica").

12. Upon information and belief, at all times relevant hereto, the Vessel was sub-time chartered from Transatlantica by Hanwin, with its principal place of business located at Room 802, Magnolia Plaza, No.777 Hongqiao Road, Shanghai, China Shanghai, and which is incorporated in England and Wales with a registered address located at Dept. 906, 196 High Road, Wood Green, London, United Kingdom N22 8HH.

**FACTS**

13. Argo and Hanwin entered into two Booking Notes, No. HWS20211025JKL dated October 25, 2021 and No. HWS20211025JAH dated October 27, 2021, for the carriage of the Cargo from Qingdao, China to Baltimore, Maryland.

14. On or about December 15–17, 2021, Argo paid Hanwin the ocean freight for the carriage of the Cargo from Qingdao, China to Baltimore, Maryland in full.

15. Upon information and belief, on or about November 3, 2021, Hanwin chartered the Vessel from Transatlantica pursuant to a charter party.

16. On or about November 20–25, 2021, at the load port in Qingdao, China, Defendants accepted and loaded approximately 877 crates (approx. 43,850 pieces) of Lumber Core plywood (*i.e.,* the Cargo described in the Bills of Lading attached hereto as **Exhibit A**) aboard the Vessel for carriage to Baltimore, Maryland.

17. Upon information and belief, the Vessel was originally expected to arrive

in Baltimore around April 8, 2022.

18. Upon information and belief, on or about November 20-25, 2021, the Defendants issued and/or ratified the Bills of Lading for the Cargo, each of which are signed and stamped at the bottom-right in Chinese and English by "LI SONG OF M/V TAC IMOLA" as "AGENT FOR AND ON BEHALF OF THE MASTER" and by "ZHENHUA INTERNATIONAL SHIPPING AGENCY (QINGDAO) CO. LTD." as "AGENT FOR THE CARRIER OF THE B/L TITLE."

19. All of the Bills of Lading are "clean," meaning that no exceptions were taken by Defendants as to the good order and condition of the Cargo at the time it was accepted and loaded on the Vessel.

20. Upon information and belief, the Defendants also accepted, loaded, stowed, and secured other cargo including large metal containers of computer equipment which were placed directly on top of the plywood cargo in holds numbers 2 and 4.

21. Upon information and belief, Defendants were responsible for safely and properly loading, stowing, stacking, securing, and bracing the Cargo and all other cargo on board the Vessel.

22. Upon information and belief, Defendants failed to safely and properly load, stow, stack, secure, and brace the Cargo on board the Vessel.

23. Upon information and belief, as a consequence of the Defendants' failure to safely and properly load, stow, stack, secure, and brace the Cargo on board the Vessel, the Cargo moved, shifted, and collapsed during the voyage.

24. Upon information and belief, on or about December 3, 2021, while east of Japan, the Vessel's crew observed smoke and fire coming from within cargo hold number

4.

25. Upon information and belief, the Vessel's crew tried to extinguish the fire in hold number 4 by using CO2.

26. Upon information and belief, after this first fire, the Defendants ordered the Vessel to deviate back towards Japan.

27. Upon information and belief, on or about December 9, 2021, instead of calling in Japan, the Vessel anchored back near Qingdao.

28. Upon information and belief, the Vessel stayed at anchor off Qingdao for twenty days.

29. Upon information and belief, on or about December 29, 2021, the Vessel began to sail towards Kunsan, Korea.

30. Upon information and belief, on or about December 30, 2021, while drifting outside Kunsan's port limits, the Vessel's crew observed smoke and fire in cargo hold number 2.

31. Upon information and belief, the Vessel's crew attempted to extinguish the fire in cargo hold number 2 by using CO2 or insufficient CO2, but failed.

32. Upon information and belief, on or about January 3, 2022, the Vessel berthed at Kunsan.

33. Upon information and belief, on or about January 4, 2022, the Vessel's crew again attempted to extinguish the fire in cargo hold number 2 by using CO2, but failed.

34. Upon information and belief, on or about January 5, 2022, the Vessel's crew flooded cargo hold number 2 with seawater to extinguish the second fire. (The fires

in cargo hold number 2 and 4 and the extinguishing of those fires are hereinafter referred to as the "Incident").

35. Upon information and belief, cargo held in holds number 1, 3, and 5 also suffered damage as a result of the Incident and/or improper loading, stowage, stacking, securing, and bracing of the cargo.

36. Upon information and belief, Argo's Cargo was held in cargo hold number 1 and was caused to suffer damage as a result of improper loading, stowage, stacking, securing, and bracing and/or the Incident. Upon information and belief, during the carriage of the Cargo aboard the Vessel from China to Baltimore, the Vessel encountered high winds and rough seas which caused the Cargo to shift and slide in the Vessel's hold because the Cargo was not properly loaded, stowed, stacked, secured, and braced prior to departure from the loading port. The shifting and sliding in turn caused bands by which the Cargo was bundled to break, caused bundles of the Cargo to break open, and caused the Cargo to suffer breakage, scarring, indentations, and other physical damage rendering it unfit, thereby diminishing or entirely destroying its commercial value.

37. Upon information and belief, the Vessel unreasonably deviated from its course several times –all without consent of or notice to Argo – to unscheduled ports in South Korea, China, Japan, and/or Canada.

38. At no time during the Incident did Defendants or any other person/entity associated with the Vessel advise Argo that any plywood cargo aboard the Vessel was exposed to fire, smoke, high temperatures, $CO_2$, and sea water or that Argo's Cargo was damaged by breakage, scarring, indentations, and other physical damage caused by improper loading, stowage, stacking, securing, and bracing and/or the Incident.

39. At no time during the carriage of the Cargo did Defendants or any other person/entity associated with the Vessel notify Argo that its Cargo suffered damage caused by shifting, sliding, and/or banded bundles breaking because the Cargo was not properly loaded, stowed, stacked, secured, and braced prior to departure from the loading port.

40. As a consequence of the lack of any notice, Argo was unable to inspect the nature of the damage, assess the extent of the damage, and investigate the cause or source of the damage to its Cargo when the Vessel deviated to South Korea, China, Japan, and/or Canada.

41. Argo had no opportunity to view its Cargo aboard the Vessel until after the Vessel arrived in Baltimore on or about June 1, 2022. During the Vessel's movement prior to that time, upon information and belief the Cargo continued to shift and slide in the hold when the Vessel encountered high winds and rough seas, thereby increasing the extent of the damage to the Cargo.

42. Meanwhile, upon information and belief, surveyors and experts for Hanwin and/or Owners had already accessed the Vessel and disturbed the evidence several months earlier in South Korea, China, Japan, and/or Canada, and when it subsequently discharged the containerized cargo of computer parts at Newark, New Jersey, all without notice to Argo and without an invitation to join in surveys, inspections, and investigations.

43. The damage to the Cargo is believed at this time to be in excess of $3,200,000.00 for property damage, for loss of revenue and loss of profit, and for other damages.

44. As time passed, the Cargo onboard the Vessel became so badly damaged, moved, shifted, collapsed, crushed, wetted, warped, decayed, and decomposed.

45. Since arrival in Baltimore the Vessel has discharged all of the Cargo, which, upon information and belief, remains in a warehouse in Maryland.

46. Upon information and belief, Defendant Hanwin Shipping failed to pay Transatlantica charter hire due and owing to Transatlantica under the charter party between Hanwin and Transatlantica, with the result that Transatlantica filed suit in this Court, *Transatlantica Commodities Pte Ltd. v. Hanwin Shipping Limited, et al.*, Case No. 22-cv-01275, and sought process of maritime attachment and garnishment in order to attach payments otherwise intended to pay stevedores Baltimore to discharge the Cargo from the Vessel, thereby delaying and impeding the discharge and the delivery of the Cargo to or for the benefit of Argo.

47. By virtue of Defendants' (individually or collectively) tortious conduct and breach of contract, including but not limited to breach of the Bills of Lading, failure to exercise due diligence to make the Vessel seaworthy, improper loading, stowage, stacking, securing, and bracing of the Cargo, unreasonable geographical deviations (including towards Canada), failure to exercise due care for the custody of the Cargo, unreasonable delay in delivery and geographical deviation, inadequate firefighting system, training and equipment, conversion, misinformation, and reckless and gross negligence, Argo has incurred out-of-pocket costs and expenses which now are as best estimated to exceed $3,200,000.00 and continue to accrue, together with loss of revenue and loss of profit, and for other damages none of which has been paid or reimbursed by Defendants, nor are such cost or expenses recoverable under the terms of Argo's

insurance policy.

48. Argo is entitled to, among other things, the sound market value of the Cargo at the intended port of discharge, Baltimore, had the goods arrived in the same sound and good quality condition as when loaded.

49. Before filing this Verified Complaint, the Britannia Steam Ship Insurance Association Europe posted a Letter of Undertaking dated July 1, 2022 in favor of Argo to secure Argo's claims against the Vessel in the total amount of $3,200,000.00 (the "LOU"). *See* **Exhibit A**.

## COUNT I – BREACH OF MARITIME CONTRACT

50. Argo repeats and realleges each and every allegation set forth in paragraphs 1–49 above.

51. Argo is the named "consignee" on each and every Bill of Lading attached as **Exhibit B** to this *Verified Complaint.*

52. Defendants have breached its maritime contract with Argo as set out above.

53. The Cargo described in the Bills of Lading was in good order and condition when tendered to and accepted by the Defendants at the load port, but it was not delivered to Argo at the discharge port in the same good order and condition; instead, the Cargo was broken, scarred, indented, wetted, decayed, warped, decomposed, and otherwise damaged so as to render it unfit, thereby entirely destroying its commercial value.

54. At this time, the damage to the Cargo is believed to be in excess of $3,200,000.00 although this estimate may require further amendment due to the fact that other damages continue to accrue.

55. Argo has sustained and continues to sustain substantial damages as a direct and proximate result of Defendants' individual and collective material breaches of contract.

56. Argo has a maritime lien against the Vessel for the full amount of damages claimed and for those damages yet unassessed.

57. Consequently, Argo is entitled to a judgment against said Vessel, *in rem*, and the Defendants, *in personam,* in the amount of the specified claims, with interest and costs.

58. Argo therefore demands judgment, as set out more fully below.

## COUNT II – BREACH OF MARITIME TORT

59. Argo repeats and realleges each and every allegation set forth in paragraphs 1–58 above.

60. The Cargo described in the Bills of Lading was in good order and condition when tendered to and accepted by the Defendants at the load port, but it was not delivered to Argo at the discharge port in the same good order and condition; instead, the Cargo was broken, scarred, indented, wetted, decayed, warped, decomposed, and otherwise damaged so as to render it unfit, thereby entirely destroying its commercial value.

61. Defendants had a duty to use reasonable care in the loading, stowage, stacking, securing, bracing, and carriage of the Cargo.

62. Defendants breached their duty of care by, among other things, failing to properly load, stow, stack, secure, and brace the Cargo in accordance with industry standards, and in accordance with the specifications agreed to in the Contract.

63. Defendants' loading, stowage, stacking, securing, bracing, and carriage of the Cargo violates accepted industry standards and local practice.

64. As a result of the Defendants tortious conduct, the Cargo was broken, scarred, indented, and otherwise damaged so as to render it unfit, thereby entirely destroying its commercial value.

65. It was foreseeable that Argo would suffer damages as a direct and proximate result of Defendants' breaches of their duties of care.

66. Argo has suffered and will continue to suffer damages as a direct and proximate result of Defendants' negligence.

67. By virtue of the Defendants' (individually and collectively) tortious conduct, including their failure to exercise due diligence to make the Vessel seaworthy, failure to exercise due care for the custody of the Cargo, unreasonable deviation, and delay, conversion, misinformation, and reckless and gross negligence, Argo has suffered losses and damages estimated to be $3,200,000.00, which continues to accrue.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Argo Fine Imports, LLC, respectfully prays that:

A. Any security thereafter fixed by this Honorable Court be conditioned for the maximum amount permitted by Rule E(5), which permits up to twice the amount of Argo's claim;

B. The claims of Plaintiff, Argo Fine Imports, LLC, be adjudged to be a maritime lien on the M/V TAC IMOLA, her engines, tackle, appurtenances, etc., and that a judgment be entered in favor of Plaintiff, Argo Fine Imports, LLC, for its own account against the M/V TAC IMOLA, her engines, tackle, equipment, appurtenances, etc., for

the amount of $3,200,000.00, subject to increase or decrease as the situation warrants, with interest, costs, and attorneys' fees;

C.     This Honorable Court issue judgment against the Vessel, in an amount in excess of $3,200,000.00, plus fees, interest, attorneys' fees and costs;

D.     This Honorable Court issue judgment, jointly and severally, against the Defendants, Hanwin Shipping Limited, Ratu Shipping Co. SA, Nisshin Shipping Co. Ltd., and Fleet Management Ltd.-HKG, *in personam,* by reason of the breach of contract, tort, bailment, conversion, and as otherwise specified in this Complaint, in an amount in excess of $3,200,000.00, together with fees, interest, attorneys' fees and costs, and;

E.     This Honorable Court grant such other and further relief as it deems just and proper.

*/s/ David McI. Williams*
David McI. Williams (Bar No. 00357)
Ashley L. Ensor (Bar No. 19902)
GORMAN & WILLIAMS
36 South Charles Street, Suite 900
Baltimore, MD 21201
Tel:    410-528-0600
Fax:    410-528-0602
*Attorneys for Plaintiff*
*Argo Fine Imports, LLC*

Of Counsel:

David James, Esq.
Clark Hill PLC
2615 Calder Avenue
Suite 240
Beaumont, TX  77702

## **VERIFICATION**

I, Robert MacMaster, Manager of Argo Fine Imports, LLC, verify under the penalties of perjury that the foregoing Complaint is true and correct based upon my personal knowledge, documents that have become available to me, and upon information and belief, and that I am authorized to verify the Complaint filed herein

Executed on this 17 day of November 2022.

_____
Robert MacMaster, Manager